Anibal CANALES, Appellant,

v.

The STATE of Texas.

No. 73988.

Court of Criminal Appeals of Texas.

Jan. 15, 2003.

Rehearing Denied March 19, 2003.

Paul Hoover, Jeff Harrelson, Texarkana, for appellant.

Mark Mullin, Special Prosecution Unit, Huntsville, Matthew Paul, State's Attorney, Austin, for state.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, WOMACK, KEASLER, HOLCOMB, and COCHRAN, JJ., joined.

A jury convicted appellant of capital murder pursuant to Section 19.03(a)(5)(B), Texas Penal Code, which makes it a capital offense for a person to knowingly or intentionally murder another person, while in-

carcerated in a penal institution, with the intent to establish, maintain, or participate in a combination or in the profits of a combination. The trial court sentenced appellant to death pursuant to the jury's answers to the special issues submitted at the punishment phase. Appellant raises fifteen points of error in an automatic direct appeal to this Court. We affirm.

The evidence showed that appellant, while incarcerated in prison, was one of approximately 106 members of the Texas Mafia, a criminal organization that carries on assorted criminal activities. The evidence also showed that appellant and another inmate murdered the victim based on orders from a Texas Mafia member because the victim had interfered with some business dealings of the Texas Mafia. Appellant described the murder to another Texas Mafia member in a letter [1] in which appellant wrote:

> Puff [the other inmate] put the hold on [the victim], and I [appellant] grabbed his arms. It went smooth. He lost consciousness right away, and struggled for a bit. I took the time to inform him who we were and why he's going to die. Puff told him, don't even fuck with the Texas mafia in hell. ha, ha, ha. Anyway, we made sure the dick sucker was dead, and I declared the hit complete. We put his shit smelling ass on the top bunk and went quietly out the door.

In support of appellant's alibi defense, appellant's lawyer read into the record a statement by another inmate who was unavailable to testify at appellant's trial for medical reasons.

> [APPELLANT'S LAWYER]: This is a statement of Melvin Walker, an inmate at the Telford Unit. The statement was given July 23rd, 1997. Mr. Walker's

housing assignment was 3–Building, A-pod, Cell–29.

The statement reads as follows:

> "At the time that this incident was supposed to have happened [appellant] was sitting in front of his cell. I was sitting there talking to him. Someone came in and said something had happened on B–Pod, and we had been sitting together for over an hour talking. [Appellant] was on cell restriction, and was staying close to his cell. We sat and rapped for over an hour before we heard something had happened.
>
> Signed, Melvin Walker."

In point of error three, appellant argues that the trial court erroneously overruled his motion for a directed verdict and his objection to the jury charge at guilt/innocence on the basis that the evidence was insufficient to prove the "combination" element. We consider these claims to be a challenge to the legal sufficiency of the evidence to support the "combination" element of appellant's conviction. This requires the Court to view all of the evidence in the light most favorable to the verdict and then determine whether any rational trier of fact could have found this element of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex. Cr.App.1989).

The prosecution claimed that appellant murdered the victim with the intent to "participate in a combination." Section 19.03(a)(5)(B) does not define "combination." The Organized Crime section of the Penal Code, however, defines a "combination" as "three or more persons who collaborate in carrying on criminal activities." *See* Section 71.01(a), Texas Penal Code. That definition of "combination" was sub-

---

1. This letter will be referred to in points of    error one and ten.

mitted to the jury in the court's charge without objection from either party and both parties rely on this definition of "combination" in their briefs to this Court. We will apply this definition of "combination" in this case.

■ Appellant argues that the evidence is insufficient to establish that "three or more persons who collaborate in carrying on criminal activities were involved in the [victim's] death, as is required under the statute to establish a combination" (internal quotations omitted). The State argues that it did not have to prove that three or more persons who meet the definition of "combination" in Section 71.01(a) were involved in the victim's death. The State argues that appellant could have acted alone in murdering the victim and still be guilty of capital murder under Section 19.03(a)(5)(B) so long as appellant murdered the victim with the intent to participate in a combination as defined by Section 71.01(a).

■ We agree. The evidence shows that three or more persons, including appellant, collaborated to kill the victim. Point of error three is overruled.

In point of error one, appellant claims that the trial court erroneously denied his mistrial motion after the prosecution commented on his failure to testify. The record reflects that, during closing jury arguments at guilt/innocence, appellant's lawyer made an assertion, unsupported by the record, that "they" (the Texas Mafia?) had appellant write the letter "with the understanding that [appellant] couldn't be prosecuted because he had an ironclad alibi."

[APPELLANT]: ... The only explanation is that they had [the recipient of the letter] solicit the letter from [appellant], with the understanding that [appellant] couldn't be prosecuted because he had

an ironclad alibi, which he's got. He's got an ironclad alibi.

The prosecution responded in its closing jury arguments by rhetorically asking if there was "any other way for [appellant] to explain the letter."

[PROSECUTION]: [Appellant's lawyer] says that appellant wrote the letter because he had an ironclad alibi. Really, was there any other way for [appellant] to explain the letter? I mean really, what do you do if you're sitting over there and you have to explain this letter?

[APPELLANT]: Objection, Your Honor, I will have a motion.

[TRIAL COURT]: Alright [sic], we'll take it up later.

[APPELLANT]: Take up at the conclusion.

[TRIAL COURT]: Yes, sir.

[PROSECUTION]: [Appellant's lawyer] explanation is that somehow [appellant] had an ironclad alibi, therefore, he wrote the letter. The logic doesn't follow. He's actually suggesting that [appellant]—if I understand him—that [appellant] knew the letter was going to be intercepted, and we get it, so it would take the heat off of somebody else. That's phenomenal—that's phenomenal to think that.

When appellant's counsel moved for a mistrial on the basis that the prosecution's jury arguments commented on appellant's failure to testify, the prosecution responded that it was rebutting statements appellant had made during his closing jury arguments. The trial court denied appellant's mistrial motion.

■ On appeal, appellant claims that the prosecution's arguments commented on his failure to testify primarily because they referred to appellant's (and not his lawyer's) explanation for why appellant

wrote the letter. Appellant argues in his brief:

> If the comment had been "Really, was there any other way for [*appellant's lawyer*] to explain the letter", it may not have been objectionable. However, the comment explicitly says "was there any other way for [*appellant*] to explain the letter", after Appellant had exercised his constitutional right not to testify.

(Emphasis in Original).

■ Prosecutorial comment that refers to an accused's failure to testify violates the accused's Fifth Amendment right against compelled self-incrimination. *See Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 1232–33, 14 L.Ed.2d 106 (1965); *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex.Cr.App.2001). The comment must clearly refer to the accused's failure to testify, and it is not sufficient if it "might be construed as an implied or indirect allusion." *Id.* The "test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.*

As we understand it, appellant argues that the prosecutor's rhetorical comment asking if there was any other way for appellant (not his lawyer) to explain the letter clearly referred to appellant's failure to testify and explain why he wrote the letter. However, given the context in which the prosecution's comment was made (as a response to the argument of appellant's lawyer speculating on why appellant wrote the letter), we cannot conclude that the jury necessarily took it as a comment that appellant's guilt could be inferred from appellant's failure to testify. *Cf. Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Cr.App.2000) (a permissible area for jury argument is "answer to argument of opposing counsel"). Point of error one is overruled.

■ In point of error two, appellant claims that the trial court erroneously denied his motion for mistrial because of improper prosecutorial comments during voir dire. We set out the relevant portions of the voir dire record.

Q. [PROSECUTION]: [Veniremember], yes. Talk to me?

A. [VENIREMEMBER]: It wouldn't make a difference on whether or not [appellant] were guilty, but if the victim would have done something to provoke this, then it may make a difference on how the testimony is received.

Q. [PROSECUTION]: You bet. You bet. And **any defenses,** [veniremember], that [appellant] wishes to bring to you—**he should bring,** and have every right to bring. **I say "should"—I'm not going to say what he should do—**

[APPELLANT]: Objection, Your Honor.

[PROSECUTION]: I apologize, I didn't mean to—

[APPELLANT]: I have a motion to be heard outside the presence.

[TRIAL COURT]: I will take it up—we'll take it up later.

Q. [PROSECUTION]: **I apologize. I misstated. [Appellant] doesn't have to say anything here in this case. What I meant to tell you was, he can do that if he wishes. Okay? And if he does, then you can hear about those. I want to be clear that I misstated that. There's nothing that says he should. That's his choice. Okay?**

(Emphasis Supplied).

Appellant claims that the prosecutorial comment "any defenses" that "he should bring" were improper comments on appel-

lant's right to remain silent (failure to testify) and also improperly shifted the "burden to [appellant] to bring forth a defense." We, however, note that immediately following the objectionable comments, the prosecution corrected any misstatements of the law that it may have made. Considering the entirety of the voir dire, any error in the prosecution's initial comments was harmless. Point of error two is overruled.

■ In point of error four, appellant claims that the court's punishment charge should have charged the jury on appellant's parole eligibility. Appellant was not entitled to such a charge under then existing law. *See Ladd v. State,* 3 S.W.3d 547, 570–71 (Tex.Cr.App.1999), cert. denied, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). Point of error four is overruled.

■ In point of error five, appellant claims that the trial court abused its discretion to deny his motion for continuance. The basis of appellant's motion for continuance was that prison authorities moved appellant from the Telford prison unit to another prison unit some distance away from appellant's lawyers. Prison authorities did not return appellant to the Telford unit until approximately one and one-half months before trial.

On appeal, appellant claims that prison authorities "failed to transfer him [back] to the Telford Unit in a timely manner to effectuate the kind of communication necessary to prepare a defense to a charge that carries the ultimate punishment." This, however, does not satisfy appellant's burden to show that he was "actually prejudiced by the denial of his motion" for continuance. *See Janecka v. State,* 937 S.W.2d 456, 468 (Tex.Cr.App.1996), cert. denied, 522 U.S. 825, 118 S.Ct. 86, 139 L.Ed.2d 43 (1997) (defendant's assertion on appeal that "he was unable to adequately prepare his defense" did not establish

specific prejudice from trial court's failure to grant his motion for continuance). Point of error five is overruled.

■ In point of error six, appellant claims that "the trial court erred in failing to grant Appellant's motion in limine regarding the admissibility of gang information, as such information is unfairly prejudicial, and as the court's ruling allowed improper character evidence to be admitted over Appellant's objection" (internal quotations omitted). Appellant complains that Sergeant Donna Johnson, who was in gang intelligence in the prison system, was allowed to testify about "gang information" regarding the Texas Mafia.

Q. [PROSECUTION]: Alright [sic]. Would you—now the Texas Mafia. Do you have knowledge about that group? Are you familiar with them?

A. [OFFICER JOHNSON]: I'm familiar with them, yes. They are a predominantly white group, that is made of convicts and ex-convicts that was in the Texas Department of Criminal Justice in the mid–80's, and their purpose is mainly for themselves. As it says in their rules, "if it isn't money, it isn't Texas Mafia." They are organized crime of the old school.

Q. [PROSECUTION]: Alright [sic]. There are actually other philosophies within some gangs in TDCJ, right?

A. [JOHNSON]: Yes.

Q. [PROSECUTION]: But Texas Mafia is old school?

A. [JOHNSON]: That is written in their rules.

Q. [PROSECUTION]: Okay. Do you know if there are at least three members of the Texas Mafia?

A. [JOHNSON]: Yes, sir.

Q. [PROSECUTION]: Okay. And you said if it's not about money—how did

you say that—"if it's not money, it's not Texas Mafia"?

A. [JOHNSON]: That's one of the phrases that's in their rules. "If it's not money, it's not Texas Mafia."

[APPELLANT'S LAWYER]: Your Honor, I am going to object at this point, and ask if we can approach.

[TRIAL COURT]: Alright [sic] step forward.

ALL ATTORNEYS AT THE BENCH

[APPELLANT'S LAWYER]: We are going to object to the philosophies of the gang, or specific instances of other parts of the gang are involved in. I'm going to at least object to the relevance, and maintain that [appellant] was not personally involved in it.

[APPELLANT'S OTHER LAWYER]: This is character evidence, Judge, without the proper predicate.

[TRIAL COURT]: I assume it's about the combination.

[PROSECUTOR]: We're setting up the combination, Judge.

[TRIAL COURT]: I think he's entitled to it. Let's just don't—yeah—overruled for now.

After this Johnson testified about the Texas Mafia's various criminal activities. Johnson also testified that appellant had a Texas Mafia tattoo on his body.

Q. [PROSECUTION]:—well, let's don't go any further right now. Let's just take it one question at a time.

And what is the answer to the question, does [appellant] have a Texas Mafia tattoo on his body?

A. [JOHNSON]: Yes, sir.

We understand appellant to argue that the evidence of his membership in the Texas Mafia and of the Texas Mafia's criminal activities were extraneous to the charged offense and offered solely for a character conformity purpose and that any probative value of this evidence was substantially outweighed by the danger of unfair prejudice. *See* Texas Rules of Evidence 404(b); *Montgomery v. State*, 810 S.W.2d 372, 386–393 (Tex.Cr.App.1990) (op. on reh'g). This evidence, however, was not extraneous to the charged offense but was part of the "combination" element of the charged offense. And, the trial court was well within its discretion to decide that the probative value of this evidence was not "substantially outweighed by the danger of unfair prejudice." *See id.* Point of error six is overruled.

In point of error seven, appellant claims that the trial court erred in requiring appellant to display a Texas Mafia tattoo on his body to the jury. We, however, conclude that the trial court did not abuse its discretion to decide that this evidence was admissible to prove the "combination" element of the offense and that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. Also, any claim that appellant might be making that requiring him to display his Texas Mafia tattoo to the jury violated his Fifth Amendment right against compelled self-incrimination is without merit. *See Whitlock v. State*, 170 Tex.Crim. 153, 338 S.W.2d 721, 723 (1960). Point of error seven is overruled.

In point of error eight, appellant claims that the trial court "erred in failing to sustain Appellant's objection to Appellant being present in court while wearing leg shackles." The record reflects that, when appellant expressed concern to the trial court that the jury might see or hear his shackles, the trial court responded that appellant would not have to stand before the jury and reveal or move his shackles to which appellant responded, "Okay. Thank you, Your Honor." Nothing in the record

indicates that the jury ever saw or heard or was otherwise aware that appellant was wearing shackles. Assuming, therefore, that appellant preserved this claim for appeal, he makes no showing of harm or prejudice. *See Cooks v. State,* 844 S.W.2d 697, 722–23 (Tex.Cr.App.1992), cert. denied, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993) (any error in requiring defendant to wear shackles was harmless where record did not reflect that defendant's "shackles were actually seen by the jury"). Point of error eight is overruled.

In point of error nine, appellant claims that the trial court "erred in failing to grant Appellant's motion for mistrial after prosecutor repeatedly offered document for admission, when the prosecutor had not laid proper foundation, forcing Appellant's counsel to repeatedly object, resulting in prejudice to Appellant." The record reflects that the prosecution was using a prison record containing appellant's known fingerprint to establish that a fingerprint found on the letter belonged to appellant. Appellant moved for a mistrial claiming that the prosecution was engaging in tactics that forced appellant to make objections in front of the jury as if appellant was "hiding something" which appellant claimed was "prejudicial."

> [APPELLANT]: Comes now [appellant] in this case and moves the Court to declare a mistrial in that the State has offered a piece of evidence which they have a perfect chain of custody on. They have the recipient they have every way in the world to prove—this is one of the most critical pieces of evidence in this case. It has been delivered to us, we know which way it's coming in. The recipient is a State's witness, listed and here, and that evidence has been offered without any semblance of foundation simply for the purpose of making me object to it at this time in front of the jury, as to—as if I'm hiding something, and I think that is a tactic that's base, and it's certainly prejudicial. Move for a mistrial.
>
> [THE COURT]: Would you like to respond, [prosecutor]?
>
> [PROSECUTOR]: That's not what happened, Judge. We were offering this document—
>
> [THE COURT]:—are we talking about the letter now? Is that what we're referring to, [appellant]?
>
> [APPELLANT]: Yes, sir, 25.
>
> [THE COURT]: Okay.
>
> [PROSECUTOR]: This document is being offered because it has [appellant's] fingerprint on it, and we intend to show later that that is [appellant's] handwriting, and that it corresponds to other writings and documents which we do strongly care about being admitted in the case for their content.
>
> The content of this letter would be—possibly become important later in the trial. Maybe at punishment, but we're simply concerned about the fingerprint at this point. I certainly don't mind laying more predicate with someone else, but [appellant] is wrong in accusing me of what he was accusing me of. I had no malicious intent. We do intend to tie the fingerprinted letter to the letter—and other letters to [appellant].
>
> [THE COURT]: The motion is denied.

On appeal, appellant claims that "[s]uch prosecutorial conduct persistently disregarded the Court's rulings regarding the procedure to follow for admissibility of the document in question, resulting in prejudice to Appellant, which requires reversal." The record, however, does not support this assertion or an assertion that the prosecution was engaging in tactics that unfairly prejudiced appellant in front of the jury. We further note that the letter

was properly admitted into evidence. Point of error nine is overruled.

■ In point of error ten, appellant claims that the trial court "erred in failing to sustain Appellant's objection to prosecutor reading, with unfairly prejudicial inflection, [the] letter in evidence (State's Exhibit # 27)." The record reflects that, before the prosecution read the letter to the jury, appellant objected to the "prosecutor reading the letter, and inflect it whichever he wants to" because the jury could read it "and put emphasis on whatever they want to put the emphasis on." The trial court ruled that the prosecution could read the letter to the jury and further stated that "if there's objection as the way [the prosecution's] reading it, I guess I'll take it up, but I mean, just reading the letter." While the prosecution was reading the letter to the jury, appellant made no further objection that the prosecution was reading it "with unfairly prejudicial inflection." Appellant, therefore, presents nothing for review in this point of error. *See* Texas Rules of Appellate Procedure 33.1(a)(1) (party complaining on appeal has burden to preserve claim with specific and timely objection and obtain a ruling on it). Point of error ten is overruled.

■ In point of error eleven, appellant claims that the trial court "erred in failing to sustain Appellant's objection to irrelevant testimony of inmates defeating locking mechanisms on doors, resulting in unfair prejudice to Appellant" (internal quotations omitted). The complained-of testimony was admitted at the punishment phase during the prosecution's cross-examination of a defense witness who had testified on direct examination that inmates housed in "administrative segregation" could be less dangerous to the general prison population.

Q. [PROSECUTION]: Lieu Lieutenant, I'm sorry, have you ever heard of inmates defeating locking mechanisms on the doors?

A. Yes, sir.

On appeal, appellant argues that this testimony "was irrelevant and unfairly prejudicial." We cannot say that the trial court abused its discretion to admit this evidence on the "future dangerousness" special issue as a response to the defensive theory that a life-sentenced appellant housed in "administrative segregation" might not be dangerous. It also showed that a life-sentenced appellant housed in "administrative segregation" could still commit violent acts. Point of error eleven is overruled.

■ In point of error twelve, appellant claims that the trial court "erred in sustaining State's objection to Appellant's proffered documentary evidence, and thereafter failing to admit said evidence." The record reflects that during the punishment phase appellant unsuccessfully attempted to admit into evidence a June 2000 American Bar Journal article critical of the death penalty entitled *"Holdouts in the Global Village."* On appeal, appellant claims that this article would have "help[ed] the jury in its punishment deliberations."

The trial court, however, did not abuse its discretion to decide that this article would not have aided the jury in making "an individualized assessment of the appropriateness of the death penalty" and that the article had no relevance to any of the special issues since it did not meet the definition of relevant mitigating evidence. *See Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 2945–47, 106 L.Ed.2d 256 (1989) (relevant mitigating evidence is evidence of the defendant's background or character or of the circumstances of the offense that mitigate against imposing the

death penalty). Point of error twelve is overruled.

In point of error thirteen, appellant contends that the trial court "erred in failing to grant Appellant's motion to quash jury panel because of unconstitutional death qualification procedure of voir dire." Appellant's brief asserts that the "weight of authority is against this issue" but nevertheless requests reversal of appellant's conviction "because the death qualification used in Texas violates Appellant's Sixth and Fourteenth Amendment Rights of the United States Constitution, and the Texas Constitution, in that it produces a jury more likely to convict, and which is more likely to impose the death penalty."

We are disinclined to hold that jury selection conducted in accordance with state law violates state or federal constitutional law. This Court has also rejected claims similar to those made by appellant here. *See Granviel v. State*, 552 S.W.2d 107, 124 (Tex.Cr.App.1976), cert. denied, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977) (rejecting claims that jury selection process produces "conviction-prone" and "death-penalty qualified" jurors and that jury selection process also denies equal protection "because a different jury selection process is employed against the class of persons accused of capital crimes without any rational or reasonable justification for applying such procedure"). Point of error thirteen is overruled.

 In point of error fourteen, appellant contends that the trial court "erred in failing to sustain Appellant's objection to procedure for exercising peremptory challenges." Appellant argues that the trial court abused its discretion "in failing to order the State to exercise its challenges for cause and peremptory challenges before requiring the Defense to exercise any type of challenge." The trial court was not required to order the prosecution to

follow this procedure in exercising its challenges. *See Hughes v. State*, 24 S.W.3d 833, 841 (Tex.Cr.App.), cert. denied, 531 U.S. 980, 121 S.Ct. 430, 148 L.Ed.2d 438 (2000); *Bigby v. State*, 892 S.W.2d 864, 890–92 (Tex.Cr.App.1994) (White, J., concurring). Point of error fourteen is overruled.

In point of error fifteen, appellant contends that the trial court "erred in failing to sustain Appellant's objection to the Court's jury charge on punishment as the death penalty violates the Eighth Amendment of the United States Constitution." The death penalty does not violate the Eighth Amendment. *See Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Point of error fifteen is overruled.

The judgment of the trial court is affirmed.

PRICE and JOHNSON, JJ., concurred.