COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-200-CR

JUAN JOSE SALDIERNA APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Juan Jose Saldierna appeals his conviction for murder and sentence of thirty-five years in prison.  We affirm.

On the evening of May 15, 2005, several gang members in an older model blue pickup truck committed a drive-by shooting of a residence in Arlington.  No one was injured, but bullets hit the house’s garage and a vehicle in the driveway. 

Three brothers who lived at the house, including appellant, immediately began to pursue the pickup truck.
(footnote: 2)  Appellant drove a black Honda Civic, and his two younger brothers drove an older model, “primered” blue or gray Pontiac LeMans.  At some point during the pursuit, appellant fired at least seven shots at the pickup truck, killing one of its passengers, Walter Rodriguez. 

Following a five-day trial, a jury convicted appellant of murder, answered “no” to his special issue on sudden passion, and sentenced him to thirty-five years in prison. 

In his first issue, appellant complains that the trial court improperly denied his request for an instruction on the lesser included offense of “deadly conduct” under section 22.05(b)(1) of the Texas Penal Code.
(footnote: 3)  A person commits the offense of deadly conduct if he “knowingly discharges a firearm at or in the direction of . . . one or more individuals.”
(footnote: 4)  

  
 We use a two-step analysis, developed by the Texas Court of Criminal Appeals in 
Royster v. State
, to determine whether appellant was entitled to a lesser included offense instruction.
(footnote: 5) 
 
An offense is a lesser included offense if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged, or if it differs from the offense charged only in that a less culpable mental state suffices to establish its commission.
(footnote: 6)  
This inquiry is a question of law that
 is performed by comparing the elements of the offense as alleged in the indictment with the elements of the potential lesser included offense.
(footnote: 7) 

In addition
, some evidence must exist in the record that would permit a jury rationally to find that if appellant is guilty, he is guilty only of the lesser offense.
(footnote: 8)  
The evidence must be evaluated in the context of the entire record.
(footnote: 9)  The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence, and 
anything more than a scintilla of evidence entitles a defendant to a lesser charge.
(footnote: 10) 
 In other words, the evidence must establish the lesser included offense as “a valid, rational alternative” to the charged offense.
(footnote: 11)

Applying the
 Royster
 analysis to the facts of this case, appellant was not entitled to the submission of a lesser included offense instruction on deadly conduct.  To prove murder as alleged in the indictment, the State was required to show that appellant caused the death of Rodriguez by shooting a firearm at Rodriguez with the intent to kill him or cause him serious bodily injury.
(footnote: 12)  To prove deadly conduct, the State would have only been required to show that appellant knowingly shot a firearm at or in Rodriguez’s direction.
(footnote: 13) Thus, to prove the greater offense of murder, the State was required to prove the elements of deadly conduct “plus something more.”
(footnote: 14)  But, 
appellant was not entitled to the submission of a lesser included offense instruction on deadly conduct because there is no evidence that would permit a jury rationally to find that appellant was guilty only of deadly conduct.  Appellant contends that the jury could have found that he only intended to scare the persons in the truck and not to cause serious bodily injury to Rodriguez or his death based on three facts: (1) although he “fired at least six shots . . . only one bullet found a human target”; (2) he was firing from inside a vehicle; and (3) no one was injured at appellant’s residence, thus appellant might not have meant to injure anyone either.  Viewing this evidence in the context of the entire record, however, we do not believe that it could lead a jury rationally to believe that appellant was guilty only of deadly conduct.
(footnote: 15)  Significantly, appellant pointed a loaded SKS assault rifle at a pickup truck filled with people and fired several times.  At least six bullets hit the truck, which was carrying passengers in its cab and bed, and witnesses testified to hearing a total of up to twelve shots at two different locations.
(footnote: 16)  
The fact that only one of the many bullets fired by appellant from inside the moving vehicle struck and killed only one person in the truck is not evidence on which a rational jury could rely to find appellant guilty only of deadly conduct.  
Because 
there is no evidence to establish deadly conduct as a valid, rational alternative to murder,
 the trial court did not err in refusing to submit deadly conduct to the jury as a lesser included offense.  We, therefore, overrule appellant’s first issue. 
 

In his second issue, appellant contends that the jury’s failure to find sudden passion pursuant to Texas Penal Code section 19.02(d) was so against the great weight and preponderance of the evidence as to be manifestly unjust.

During the punishment phase of a murder trial, a defendant may raise the issue of whether he caused a person’s death under the immediate influence of sudden passion arising from an adequate cause.
(footnote: 17)  “Sudden passion” means passion directly caused by and arising out of a provocation by the individual killed or another acting with the person killed which arises at the time of the offense and is not solely the result of former provocation.
(footnote: 18)  “Adequate cause” means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.
(footnote: 19)  If the defendant proves sudden passion by a preponderance of the evidence, the offense is punished as a second degree felony.
(footnote: 20)  The mere fact that an individual acts in response to provocation, however, is not even sufficient to warrant a sudden passion charge.
(footnote: 21) 

In reviewing this issue, we consider all the relevant evidence to determine whether the negative finding is so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.
(footnote: 22)  Our evaluation should not substantially intrude upon the fact-finder’s role as the sole judge of the weight and credibility of witness testimony, and we may not substitute our judgment for that of the fact-finder.
(footnote: 23)
 Here, the evidence supporting appellant’s claim that the killing was a result of sudden passion arising from an adequate cause showed that someone in the pickup truck had recently committed a drive-by shooting of appellant’s family’s house.  Appellant, his parents, his young daughter, and others were present at the time, and at least one person was standing outside.  Although it is unclear precisely when during the ensuing pursuit Rodriguez was killed, one witness testified that he was hit just as the truck was leaving the block where the drive-by shooting occurred.  Appellant, however, did not appear nervous or upset to the officer who responded to the drive-by shooting. 

Approximately one month before the murder, appellant had shot at another person in an unrelated incident.  Fabian Soliz, Jr. testified that he saw his sister and appellant argue at a car wash, and appellant had a gun but eventually drove away.  Soliz also left the car wash, thinking the incident was over, but soon discovered that appellant was following him.  When both Soliz’s and appellant’s cars stopped, appellant pulled out the gun and fired three shots in Soliz’s direction, hitting his vehicle.  Soliz testified that appellant was not yelling and appeared “calm the whole time.”
(footnote: 24)  

Viewing this evidence under the appropriate standard, we cannot conclude that the jury’s failure to find that appellant acted under the immediate influence of sudden passion is so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.  We overrule appellant’s second issue.

In his third issue, appellant complains that the trial court improperly overruled his objection to the State’s sentencing argument.  To be permissible, the State’s jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.
(footnote: 25)  The State may properly ask the jury to be the voice of the community but not to lend its ear to the community.
(footnote: 26)  The State may also argue the impact of the verdict on the community, but it may not ask the jury to consider what the community wants, desires, requires, or expects.
(footnote: 27) 

During the punishment phase, appellant asked the jury to consider probation.  In rebuttal, the State argued, “I wonder if the people on Mayfield Road at that intersection think he ought to be on probation?  I wonder if the people in that car, in that truck, that gets hit . . . .“
(footnote: 28)  Appellant objected, arguing that the State improperly asked the jury to do what the community expected of them.  The trial court overruled the objection, and the jury subsequently did not recommend probation and sentenced appellant to thirty-five years in prison.  
 
The State’s argument suggested to the jury that members of the community would not want appellant to be given probation.  The argument was, therefore, improper, and the trial court erroneously overruled appellant’s objection.
(footnote: 29)
 If a jury argument exceeds the bounds of proper argument, the trial court’s erroneous overruling of a defendant’s objection is not reversible error unless it affected his substantial rights.
(footnote: 30)  
In determining whether appellant’s substantial rights were affected, we consider the severity of the misconduct, curative measures, and the certainty of the punishment assessed absent the misconduct.
(footnote: 31)
 The focus of the first factor—severity of the misconduct—is the prejudice caused by the improper remarks.
(footnote: 32)  
In this case, 
the State’s misconduct was not egregious and did not prejudice appellant.  The improper argument only occurred at one point, in rebuttal, and the objectionable line of reasoning was not pursued or emphasized. 

With regard to curative measures, the trial court overruled appellant’s objection, and, therefore, appellant did not request an instruction to disregard.  Immediately after appellant’s objection, however, the State told the jury to “[j]ust look at the facts.”  Although a prosecutor’s curative comment may not carry the same weight as a trial court’s instruction to disregard, it is nevertheless relevant in determining harm and can, in appropriate circumstances, render an improper comment harmless.
(footnote: 33)
 Further, the jury was instructed that they could recommend probation only if they sentenced appellant to ten years or less.  The fact that the jury sentenced him to thirty-five years—significantly more than the cut-off for probation eligibility—indicates that the jury was not on the border of recommending probation and, therefore, it is likely that the punishment would have been the same absent the improper argument. 

For all these reasons, we conclude that, in the context of the entire case against appellant, the trial court’s error in overruling appellant’s objection to the State’s improper argument did not have a substantial or injurious effect on the jury’s verdict and did not affect appellant’s substantial rights.
(footnote: 34)  We overrule appellant’s third issue.

   Having overruled all of appellant’s issues, we affirm the trial court’s judgment. 

PER CURIAM

PANEL F:  CAYCE, C.J.; WALKER and MCCOY, JJ.

MCCOY, J., concurs without opinion.

DO NOT PUBLISH 

Tex. R. App. P.
 47.2(b)

DELIVERED:   October 25, 2007 
 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
There was evidence that appellant’s brothers were rival gang members of the individuals who committed the drive-by shooting, but there was no evidence that appellant was involved in any gang. 

3:
Tex. Penal Code Ann.
 § 22.05(b)(1) (Vernon 2003).  Appellant also argues that section 22.05(a) applies.  A person commits the offense of deadly conduct under section 22.05(a) “if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.”  
Id.
 
§ 22.05(a).  In the trial court, however, appellant specifically referred to sections (b) and (c), but not (a).  He has, therefore, forfeited this argument.  
See
 
Tex. R. App. P.
 33.1; 
Mendez v. State
, 138 S.W.3d 334, 341–42 (Tex. Crim. App. 2004).

4:
Tex. Penal Code Ann.
 § 22.05(b)(1). 

5:
622 S.W.2d 442, 446 (Tex. Crim. App. 1981);
 
see Hall v. State
, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007);
 Rousseau v. State
, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 919 (1993)
.  

6:
Tex. Code Crim. Proc. Ann
. art. 37.09(1), (3)
 (Vernon 2006). 

7:
Hall
, 225 S.W.3d at 535–36. 

8:
Id.
 at 536; 
Salinas v. State
, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); 
Rousseau
, 855 S.W.2d at 672–73.  

9:
Moore v. State
, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).  

10:
Hall
, 225 S.W.3d at 536; 
Moore
, 969 S.W.2d at 8.
 

11:
Hall
, 225 S.W.3d at 536.

12:
In the indictment, the State alleged that appellant “intentionally or knowingly cause[d] the death of an individual, Walter Rodriguez[,] by shooting him with a firearm,” or that appellant “intentionally, with the intent to cause serious bodily injury to Walter Rodriguez, commit[ted] an act clearly dangerous to human life, namely, shooting him with a firearm, which caused the death of Walter Rodriguez.”  
See 
Tex. Penal Code Ann.
 
§
 19.02(b)(1)–(2) (Vernon 2003).

13:
Id
. § 22.05(b)(1).

14:
See Guzman v. State
, 188 S.W.3d 185, 189 (Tex. Crim. App. 2006) (determining whether deadly conduct was an lesser included offense of attempted murder and aggravated assault as alleged in the indictment)
.

15:
See 
Tex. Penal Code Ann.
 
§§ 6.03(b), 22.05(b)(1) (Vernon 2003).

16:
Seven cartridge casings were found at these two locations, and the State’s expert determined that they had been fired from the same assault rifle. 

17:
Tex. Penal Code Ann. 
§ 19.02(d); 
Trevino v. State
, 157 S.W.3d 818, 821 (Tex. App.—Fort Worth 2005, no pet.).

18:
Tex. Penal Code Ann. 
§ 19.02(a)(2); 
Trevino
, 157 S.W.3d at 821–22.

19:
Tex. Penal Code Ann. 
§ 19.02(a)(1); 
Trevino
, 157 S.W.3d at 822. 

20:
Tex. Penal Code Ann. 
§ 19.02(d); 
Trevino
, 157 S.W.3d at 822.

21:
Trevino v. State
, 100 S.W.3d 232, 241 (Tex. Crim. App. 2003).

22:
See
 
Trevino
, 157 S.W.3d at 821;
 Naasz v. State
, 974 S.W.2d 418, 421 (Tex. App.—Dallas 1998, pet. ref’d).

23:
Trevino
, 157 S.W.3d at 821; 
Naasz
, 974 S.W.2d at 423.

24:
The State’s theory at punishment was that appellant “doesn’t get mad, he gets even.” 

25:
Felder v. State
, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). 

26:
Cortez v. State
, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984).

27:
Borjan v. State
, 787 S.W.2d 53, 55–56 (Tex. Crim. App. 1990) (noting that the State may not argue that the community or any particular segment of the community demands a particular punishment);
 Cortez
, 683 S.W.2d at 421 (listing arguments held to be improper because their effect was to ask the jury to convict or punish upon public sentiment or desire rather than the evidence that the jury had received); 
Rodriguez v. State
, 90 S.W.3d 340, 365 (Tex. App.—El Paso 2001, pet. ref’d);
 Mata v. State
, 952 S.W.2d 30, 33 (Tex. App.—San Antonio 1997, no pet.) (holding prosecutor’s comment that “probation is not what this community . . . would want” was improper).

28:
The State’s comment apparently referred to witnesses of the car chase and eventual wrecks of appellant’s brothers’ car and the blue pickup truck, and the occupants of a third vehicle that was hit by the pickup.  

29:
See Cortez
, 683 S.W.2d at 421 (holding trial court erred in overruling appellant’s objection to improper argument); 
Mata
, 952 S.W.2d at 33–34 (holding prosecutor’s remark that “probation is not what this community . . . would want” was improper).

30:
Tex. R. App. P. 
44.2(b); 
Martinez v. State
, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000)
; 
Mosley v. State
, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999).  

31:
See Martinez
, 17 S.W.3d at 692–93; 
Mosley
, 983 S.W.2d at 259.

32:
Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

33:
Id.
 at 84 (characterizing a prosecutor’s apology and retraction after improper argument as curative measures); 
Canales v. State
, 98 S.W.3d 690, 696–97 (Tex. Crim. App.) (holding that any error was harmless where prosecutor corrected any misstatements of the law immediately following objectionable comments), 
cert. denied
, 540 U.S. 1051(2003).

34:
See King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).