Affirmed and Majority and Dissenting Opinions filed April 24, 2008








Affirmed and Majority and Dissenting Opinions filed April 24,
2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00144-CR

____________

 

RAUL ENRIQUE YGLESIAS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th
District Court

Harris County, Texas

Trial Court Cause No. 1023639

 



 

M A J O R I T Y   O P I N I O N

Appellant Raul Enrique Yglesias appeals his conviction for
manslaughter, complaining that the trial court erred (1) in requiring him to
wear leg shackles during the guilt-innocence phase, and (2) in entering an
affirmative finding that a deadly weapon had been used during the offense.  We
affirm.

 

 








I.  Factual and Procedural Background

Complainant, L.J., was a twenty-month-old baby, whose
mother left her in Gloria Fowler=s long-term care
in 2001.  In January 2003, Fowler=s sister, Michelle
Martinez, and appellant Raul Enrique Yglesias began caring for L.J.  On April
28, 2003, L.J. was left alone in appellant=s care.  Appellant
reported to Martinez that L.J. had fallen and hit her head and that L.J. had
become unresponsive and had stopped moving.  Martinez contacted Fowler to check
on L.J.  The toddler was having a seizure when Fowler found her and called
9-1-1.

Paramedics responded to the 9-1-1 call and transported L.J.
to a children=s hospital.  She was treated by several physicians for
brain swelling and retinal hemorrhages.  A pediatrician observed old and new
bruises on L.J.=s body.  L.J. was pronounced dead on April
29, 2003.  Each of the doctors who treated or examined L.J. testified at trial.

Autopsy reports revealed that L.J. suffered from blunt head
trauma, a neck injury, and multiple contusions on her body.  According to a
medical examiner, L.J.=s neck injury stemmed from a direct impact
and the injury to her head was caused by multiple impacts.  The medical
examiner determined that the contusions were consistent with being caused by a
cane or stick and that the resulting injuries all occurred at the same time,
shortly before the child was admitted to the hospital.  The injuries, according
to the medical examiner, could not have been caused by a fall.








Appellant was indicted for the felony offense of capital
murder, to which he pleaded Anot guilty.@  At the trial
that followed, the trial court ordered appellant to be restrained by leg
shackles.  At the beginning of the guilt-innocence phase, appellant=s trial attorney
objected to appellant=s wearing leg shackles during the trial. 
Defense counsel gave three reasons for his objection:  (1) appellant did not
wear shackles the previous day during voir dire; (2) appellant had not
threatened harm or escape; and (3) appellant allegedly was medically unable to
commit violence because of his diabetic condition.  Appellant=s trial counsel
contended that appellant=s restraint by leg shackles Adestroys the
constitutional presumption of innocence.@  The trial court
overruled appellant=s objection on the stated basis that it
would not be possible for the jury to see the shackles.  When defense counsel
argued that he was not assured the shackles would not be visible to the jury
during breaks in the trial, the trial judge stated that he would Aabsolutely ensure
the jury will not see he=s shackled.@  At no time
thereafter did appellant complain or even suggest that the jury could see the
shackles or that the jury was otherwise aware that appellant was shackled.

At the
end of the guilt-innocence phase, the trial judge read the jury charge out-loud
from a computer screen and, in an admitted oversight, failed to read out-loud
to the jury the special issue requiring a finding of use of a deadly weapon in
committing the lesser-included offense of manslaughter.  However, the jury
received the special issue in written form before deliberations began.  The jury found appellant guilty of
the lesser-included offense of manslaughter, but failed to affirmatively answer
the special issue regarding use of a deadly weapon.








At the punishment phase of trial, appellant elected to have
the trial court assess punishment.  The trial court, based on the jury=s Aguilty@ verdict for manslaughter, entered an
affirmative finding for the record reflecting that a deadly weapon had been
used in the commission of the offense.  Appellant=s counsel objected to the court=s finding on the basis that the jury
did not affirmatively answer the question involving the special issue,
essentially arguing that no affirmative finding existed.  The trial court
stated for the record that the special issue in the charge would have been read
out-loud to the jury absent the oversight and that the jury nonetheless
received the special issue in written form along with the jury charge.  The
trial court noted that Aa special issue charge was not necessary to submit to the
jury in order to find the defendant guilty of one of the lesser offenses.@  In sentencing appellant to twelve
years= confinement, the trial court
ordered, over appellant=s objection, that the judgment reflect the affirmative
finding that a deadly weapon was used in commission of the offense of
manslaughter. 

II.  Issues and Analysis

A.      Did the trial court
reversibly err in requiring appellant to wear leg shackles during trial?

In his first issue, appellant alleges error by the trial
court in requiring him to wear leg shackles at trial in that the restraints
were unwarranted.  At trial, appellant argued that being forced to wear leg
shackles Adestroys the constitutional presumption of innocence. @ 

We begin by considering whether the trial court erred in
requiring appellant to wear leg shackles during trial when he was not required
to wear them in voir dire, had not threatened harm or escape, and was allegedly
medically unable to commit violence because of his diabetic condition. 








In Deck v. Missouri, the United States Supreme Court
addressed a defendant=s right under the United States
Constitution to be free from physical restraints visible to the jury, except in
certain circumstances.  See 544 U.S. 622, 630, 125 S. Ct. 2007, 2013,
161 L. Ed. 2d 953 (2005).  Even though the Deck court did not address
physical restraints that are not visible to the jury, this court has applied
the Deck analysis to cases involving shackles that it presumed were not
visible to the jury.  See Davis v. State, 195 S.W.3d 311, 315B17 (Tex. App.CHouston [14th
Dist.] 2006, no pet.).  Generally, a defendant has a right to be tried without
being shackled, whether or not the shackles are visible to the jury.  See id. 
However, the trial court has discretion to order restraints if there is a
showing of a manifest need or exceptional circumstances, such as when a
defendant poses a threat to himself or others.  See id. at 315. 
Restraints cannot routinely be ordered based on general security concerns or
the type of crime charged; rather, the need for restraints must be assessed on
a case‑by‑case basis.  See id.  A trial court abuses its
discretion in requiring a defendant to be shackled during the guilt-innocence
phase if it does so without first finding a particular reason for shackling
that is specific to the defendant.  See id. at 316.  

The trial court did not make specific findings of fact or
indicate exceptional circumstances or a manifest need for restraining appellant
by leg shackles.  Our record does not reflect sufficient reasons for the trial
court=s decision to keep
the defendant in shackles during trial.  For this reason, we conclude the trial
court abused its discretion in ordering appellant to be shackled during trial. 
See Long v. State, 823 S.W.2d 259, 283 (Tex. Crim. App. 1991)
(concluding trial court abused its discretion in ordering restraints when trial
court=s concerns were
general security concerns rather than specific to the defendant); Davis,
195 S.W.3d at 315B17 (concluding trial court abused its
discretion in ordering the defendant to be shackled because there was no
showing of exceptional circumstances or a manifest need to shackle the
defendant).  Having found error, we now must consider whether this error
warrants reversal.








Even though the trial court=s decision to
shackle appellant=s legs during trial constituted error,
this error is subject to a constitutional harm analysis.  Tex. R. App. P. 44.2(a); Davis,
195 S.W.3d at 316B17.  Therefore, we must reverse the
judgment unless we determine beyond a reasonable doubt that the error in
keeping the defendant in shackles did not contribute to the conviction or
punishment.  See Tex. R. App. P. 44.2(a);
Davis, 195 S.W.3d at 316B17.  In assessing harm we consider:  (1)
the source and nature of the error, (2) the extent to which the State
emphasized the error, (3) its probable collateral implications, (4) the weight
the jury might have given the error, and (5) whether declaring it harmless
would encourage repetition with impunity.  Davis, 195 S.W.3d at 317.  However, a trial court=s error in
ordering a defendant to be shackled is harmless if the shackles are not visible
to the jury and if they do not unduly restrict a defendant=s ability to
communicate with counsel.[1]  See
Canales
v. State, 98 S.W.3d 690, 697B98 (Tex. Crim. App. 2003); Davis, 195 S.W.3d at 317B18.

The record in this case reflects that the leg shackles were
not visible to the jury.  When appellant=s trial counsel
expressed concern over the use of the shackles, the trial court noted that it
would be impossible for the jurors to see the shackles, a statement that was
not contradicted either at the time of the objection or at any other time over
the course of the trial.  See Grayson v. State, 192 S.W.3d 790, 792
(Tex. App.CHouston [1st Dist.] 2006, no pet.).  The trial court
gave assurance that the jury would not be able to see the shackles during trial
or during breaks.  Appellant=s trial counsel likewise indicated that
jurors would not be able to see the shackles.  Nothing in the record reflects
that any member of the jury actually noticed that appellant was shackled.  The
record shows beyond a reasonable doubt that the shackles worn by appellant were
not visible to the jury.  Therefore, cases in which the record showed that the
shackles were visible to the jury are not on point.[2]









In addition, appellant has not asserted that his
communication with counsel was in any way hampered as a result of the leg
shackles.  The record shows beyond a reasonable doubt that the shackles did not
unduly interfere with appellant=s ability to communicate with his trial
counsel.  Therefore, cases in which the record showed that the shackles unduly
interfered with appellant=s ability to communicate with his trial
counsel likewise are not on point.[3]

Unnecessary restraint of a defendant during trial is
repugnant to the dignity of judicial proceedings and a practice that is
abhorrent to our constitution.  See Davis, 195 S.W.3d at 315B17.  However, in a
harm analysis, the question is whether there is a reasonable possibility that
the error might have contributed to the conviction, and without evidence that
the shackles were visible to the jury or that the shackles unduly restricted
appellant=s ability to communicate with trial counsel, binding
precedent compels the conclusion that the trial court=s error is
harmless.  See Canales, 98 S.W.3d at 698; (concluding that
ordering defendant to wear shackles was harmless); Grayson, 192 S.W.3d
at 792B93 (same as Canales);
see also Ramirez v. State, No. 14-05-00435-CR, 2006 WL 2345952, at *3
(Tex. App.CHouston [14th Dist.] Aug. 15, 2006, no pet.) (mem.
op.) (not designated for publication) (same as Canales).  In the absence
of harm, the trial court=s error is not reversible.  Accordingly,
we overrule appellant=s first issue. 

B.      Did the trial court err in entering an affirmative
finding that a deadly weapon had been used in the commission of the offense?

In his second issue, appellant contends the trial court
erred in entering an affirmative finding that a deadly weapon had been used in
the commission of the offense, even though the jury did not answer the special
issue.








When the jury is the trier of fact, the trial court
properly may enter an affirmative finding on the use of a deadly weapon when
the indictment alleges the use of a deadly weapon, the weapon is deadly per se,
or the jury affirmatively answers a special issue on the use of a deadly
weapon.  See Polk v. State, 693 S.W.2d 391, 394, 396 (Tex. Crim. App. 1985);
Adams v. State, 40 S.W.3d 142, 146 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).  When, as in this case, the judge is
the trier of fact at the punishment stage of the trial, the judge has the
authority to make an affirmative finding if the facts show, and the judge
believes, that the defendant, himself, used or exhibited a deadly weapon, even
if the jury has not answered a special issue.  See Flores v. State, 690
S.W.2d 281, 283 (Tex. Crim. App. 1985).  Even if the State did not reoffer the
evidence adduced at the guilt-innocence phase, as long as the judge assessing
punishment is the same judge who presided at trial, the trial court may enter
the affirmative finding on the use of a deadly weapon during the punishment
phase.  See Tamminen v. State, 653 S.W.2d 799, 802 (Tex. Crim. App.
1983); Wright v. State, 468 S.W.2d 422, 425 (Tex. Crim. App. 1971).[4]









Testimony during the guilt-innocence phase showed that L.J.
was left with appellant in his sole care.  Autopsy evidence and the medical
examiner=s testimony
reflect that L.J.=s injuries were not caused by a fall, but
rather were the result of multiple or direct impacts caused shortly before L.J.
was admitted to the hospital.  One treating physician testified that L.J.=s retinal
hemorrhaging was not consistent with a fall, but more consistent with serious
bodily injury being inflicted upon the child.  A pediatrician testified that
L.J.=s injuries and
resulting death stemmed from abuse.  The jury convicted appellant on a jury
charge which reflected the lesser-included offense of manslaughter that
specifically required a finding of the use of a deadly weapon, either by
appellant=s hand or by an unknown object.  At the punishment
phase, the trial judge, who presided throughout the guilt-innocence phase,
found that Aas manslaughter was presented to the jury [] the
verdict requires an affirmative finding that a deadly weapon was used during
the commission of the offense@ and entered the finding on a judgment
form.  Because the facts warranted this affirmative finding and the same judge
presided throughout the guilt-innocence phase, it was within the trial judge=s authority to
enter such a finding.  See Flores, 690 S.W.2d at 283; Tamminen,
653 S.W.2d 799, 802.

Appellant argues that if a trial court were to consider
whether a deadly weapon was used, the deadly weapon must qualify as a deadly
weapon per se, and that neither his hand nor an unknown object constitutes a
deadly weapon per se.  However, appellant has failed to adequately present this
point for consideration.  To present an issue for appellate review Athe brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.@  Tex. R. App. P. 38.1(h).  Appellant has not presented a single
argument or citation in support of this issue.  In his appellate brief,
appellant has not addressed any of the governing legal principles or applied
them to the facts of this case.  See King v. State, 17 S.W.3d 7, 23 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).  Appellant=s brief contains a
sentence that says Aa deadly weapon, if any, in this case must
be a deadly weapon per se, of which his hands or an unknown object do not
qualify.@  Such conclusory
statements, unsupported by authority, present nothing for appellate review.  Id.;
see also Vuong v. State, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992).  We
overrule appellant=s second issue.

Having overruled all of appellant=s issues, we affirm the trial court=s judgment.

 

 

 

/s/      Kem Thompson Frost

Justice

 

Judgment rendered
and Majority and Dissenting Opinions filed April 24, 2008.

Panel consists of Chief Justice Hedges, and Justices Frost
and Murphy.* 
(Hedges, C.J., dissenting).

Publish C Tex. R. App. P. 47.2(b).









[1]  Our dissenting colleague, in assessing harm in this
case, specifically focuses on the probable collateral implications, the source
and nature of the error, and whether the error would be repeated with impunity
if the error is not declared harmful.  See post at p. 2.  In cases in
which these factors were considered, the defendants= restraints either were visible or impaired
communication with trial counsel.  Boone v. State, 230 S.W.3d 907, 913 (Tex. App.CHouston [14th Dist.] 2006, no
pet.); Davis, 195 S.W.3d at 317.  Though
our dissenting colleague correctly notes that an accused may suffer harm even
when the jury is unaware of the shackles, the case under review does not fall
into either of these categories because appellant has not alleged impairment of
his ability to communicate with his trial counsel, nor does the record show any
impairment as the court in Davis determined was sufficient to warrant
reversal.  See Davis, 195 S.W.3d at 317. 





[2]  See, e.g.,
Boone, 230 S.W.3d at 913 (concluding trial court reversibly erred in
ordering defendant to wear handcuffs during trial because record showed that
handcuffs were visible to the jury).  





[3]  See, e.g.,
Davis, 195 S.W.3d at 317B18 (concluding trial court reversibly erred in ordering defendant to
wear handcuffs during trial because record showed that trial court=s order impaired defendant=s ability to communicate with trial
counsel by preventing him from writing notes to his counsel and because trial
court ordered a pen removed from defendant=s hand, which he had been using to communicate in writing
with trial counsel). 





[4]  When the jury is instructed on the law of the parties, the affirmative
finding must show that the appellant used or exhibited the deadly weapon or
that appellant knew that a deadly weapon would be used or exhibited.  See Tex. Code. Crim. Proc. Ann. art 42.12 ' 3g(a)(2) (Vernon Supp. 2008); Flores,
690 S.W.2d at 283.





*  Senior Chief Justice Paul C. Murphy sitting by
assignment.