**Opinion issued June 7, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-15-00094-CR

## NO. 01-15-00095-CR

————————————————

**DIONYSIOS SPIRO KOSMETATOS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1449194 and 1414418**

---

## MEMORANDUM OPINION

A jury convicted appellant, Dionysios Spiros Kosmetatos, of two counts of

aggravated assault of a public servant and assessed his punishment at forty years

confinement in the Institutional Division of the Texas Department of Corrections on

each count. In two issues, appellant argues that (1) the trial court erred in denying his motion for directed verdict, and (2) the evidence is insufficient to support both convictions. We affirm.

## Background

Appellant and his wife got into an argument late one evening while they were staying with appellant's mother-in-law in her third-floor apartment. When the argument turned physical, appellant's mother-in-law went to her downstairs neighbor's apartment to call for help.

Officer P. Woods and Officer S. Gromyko of the Houston Police Department responded to the disturbance call a little after midnight. Although they were driving a marked police vehicle, the uniformed officers did not use their sirens or their lights when they approached the apartment complex. According to Officer Woods, the only information the officers had when they arrived at the complex was that appellant was wearing a red shirt and that he had allegedly locked his wife out of the apartment.

Officer Woods testified that when the officers exited their marked police vehicle, they both noticed a man in a red shirt standing on a third-floor balcony peering down at them. Officer Gromyko testified that he was "relatively certain" that the man on the balcony was appellant. Both officers acknowledged, however, that

2

they had not included that detail in their offense reports or in the sworn statements they had given about the incident.

When the officers reached the third floor, they saw appellant's wife standing near the railing. She was crying and holding a broken chair leg in her hand. Moments after the officers stopped to talk to her, appellant flung the apartment door open and charged at the officers, screaming, and holding his right arm above his head.[1] As the officers struggled to restrain appellant, who was swinging his arm and trying to strike them, Officer Woods heard his partner shout, "He's got a knife." Officer Woods, who thought that appellant was trying to stab him and Officer Gromyko, shot appellant twice. Both officers testified that everything happened so quickly that they had not had a chance to knock on the door or announce their presence before appellant flung the door open and charged at them. When asked about the lighting conditions when they confronted appellant, Officer Gromyko testified that "you could see pretty well."

Appellant's mother-in-law was walking down the stairs towards her neighbor's second floor apartment when the officers arrived. Although she did not see what happened, she testified that she heard the officers knock on her door and announce, "police officers" and she heard appellant threaten the officers.

---

[1] Officer Gromyko testified that appellant was holding both arms above his head when he initially charged at the officers.

The downstairs neighbor also testified that she was standing on the second floor landing when the uniformed police officers arrived. The neighbor saw the officers walk up to the top floor and then she heard them knock loudly on the door and announce themselves as HPD officers. She also heard the officers order appellant to come out. According to the neighbor, appellant rushed out of the apartment towards the officers, screaming, with his arms above his head, and holding a knife in his hand. The neighbor watched appellant struggle with the officers over the knife for "a long time" and she heard the officers tell appellant to "drop the knife." According to the neighbor, appellant was "relentless," he "would not drop the knife."

An HPD officer with the department's crime scene unit who arrived at the scene about an hour later to investigate the officer-involved shooting testified that he had noted in his report that "the lighting conditions prior to entering the stairwell [were] dark with very limited illumination." He also noted that although the light fixture next to the third-floor apartment was not working, the area was being illuminated by lights from the floor below. "I mean, it was still dark but not to a point where you couldn't see."

**Sufficiency of the Evidence**

In his first and second issues, appellant argues that (1) the trial court erred in denying his motion for directed verdict on both counts because there was insufficient

4

evidence to prove that appellant knew that Officers Woods and Gromyko were public servants when the offenses occurred, and (2) the evidence is insufficient to support both convictions for the same reason.

## A.    Standard of Review

A challenge to the denial of a directed verdict is a challenge to the legal sufficiency of the evidence. *See Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003); *Gabriel v. State*, 290 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We review all challenges to the sufficiency of the evidence establishing the elements of a criminal offense under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2789 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In doing so, we view all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

In a jury trial, the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

## B.    Applicable Law

To obtain a conviction for aggravated assault of a public servant under the facts of this case, the State was required to prove that appellant intentionally or knowingly threatened Officers Woods and Gromyko with imminent bodily injury, used or exhibited a deadly weapon (a knife), and that he knew that the officers were public servants who were lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B) (West Supp. 2015). A defendant "is presumed to have known the person assaulted was a public servant or a security officer if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant or status as a security officer." *Id.* § 22.02(c) (West Supp. 2015).

6

**C.      Analysis**

Appellant argues that the evidence is insufficient to support his convictions because everything happened quickly and the stairwell was too dark for him to see that the men he threatened were public servants. Appellant further contends that the lack of lighting outside the apartment overcomes the presumption that he knew that the men he threatened were police officers.

Appellant relies in part on this court's opinion in *McDaniel v. State*, No. 01-11-00107-CR, 2012 WL 151465 (Tex. App.—Houston [1st Dist.] Jan. 19, 2012, pet. ref'd) (mem. op., not designated for publication). In that case, this court held that the evidence was sufficient to support the defendant's conviction for aggravated assault of a public servant because, among other things, the uniformed officers testified that they knocked forcibly on the door, they loudly announced that they were HPD officers multiple times before the charged offense occurred, and they testified that there was enough light outside the apartment for the defendant to see their uniforms. *Id.* at *2. Appellant contends that the evidence is insufficient to prove that he knew that the men outside the apartment were public servants because, unlike in *McDaniels*, Officer Woods and Officer Gromyko never knocked on the door or announced their presence as police officers, and the crime scene was dimly lit.

Although Officers Woods and Gromyko testified that they did not announce their presence with the word "police" before appellant charged at them, two

witnesses testified that they heard the officers do so when they arrived on the third floor. It was within the jury's province to believe the witnesses' testimony on this point over the officers' testimony. *See Bartlett*, 270 S.W.3d at 150 (stating that jurors are exclusive judges of facts, credibility of witnesses, and weight to be given to testimony); *see also Cole v. State*, 194 S.W.3d 538, 551 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding jury is entitled to believe any or all of testimony of State's witnesses and fact that it resolved conflicts in evidence in favor of State did not render evidence factually insufficient).

Similarly, the jury was within its province to credit the crime scene unit officer's statement that, although the area was dark, it was not so dark "where you couldn't see" and believe that "you could see pretty well" according to Officer Gromyko. Further, Officer Gromyko's and Officer Woods's testimony that they saw appellant's wife crying and holding the leg of a broken chair in her hand when they arrived on the third floor supports the inference that the lighting was sufficient for appellant to have seen the officers' distinctive uniforms.

Regardless of the lighting conditions, the jury was also within its province to credit the officers' testimony that appellant saw them exit their marked patrol car when they first arrived at the apartment complex. *See Bartlett*, 270 S.W.3d at 150 (stating that jurors are exclusive judges of facts, credibility of witnesses, and weight to be given to testimony). This testimony supports the inference that appellant knew

that Gromyko and Woods were police officers when he confronted them outside the apartment.

Furthermore, all witnesses testified that there was a struggle between appellant and the officers that went on long enough for Officer Woods to draw his pistol and shoot appellant because he would not drop the knife. One of these witnesses described appellant as "relentless." The jury could infer that appellant had ample opportunity to see the officers' uniforms and cease resisting during the close-proximity hand-to-hand combat.

Viewing the evidence in the light most favorable to the verdict, as we are required to do when reviewing the sufficiency of the evidence, we conclude that any rational factfinder could have found beyond a reasonable doubt that appellant intentionally or knowingly threatened Officers Woods and Gromyko with imminent bodily injury, used or exhibited a deadly weapon (a knife), and knew that the officers were public servants who were lawfully discharging an official duty.

We overrule appellant's first and second issues.

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

Do not publish.   TEX. R. APP. P. 47.2(b).