

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-308-CR

JAMES CURNEL                                                      APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant James Curnel appeals his conviction for capital murder. In three points, Curnel argues that the trial court erred by not including an accomplice-witness instruction in the jury charge, that his trial counsel was ineffective for not requesting an accomplice-witness instruction in the jury

---

[1] ... *See* Tex. R. App. P. 47.4.

charge, and that the trial court erred by denying his motion for instructed verdict. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Cavit Sevenler owned a moving truck. He and his helper Walter Oriana picked up a load near Grand Prairie on January 11, 2007, and they parked the truck in a motel parking lot in Grand Prairie for the night. Sevenler was on his laptop talking to one of his two young daughters when three black men approached his truck and one asked to borrow a phone. Oriana told Sevenler to roll up the window because he "felt like something was going to happen." The men asked to borrow a phone again, cussed, and then left. Oriana went to the sleeping compartment of the truck for the night. Shortly thereafter, Oriana heard a gunshot and heard Sevenler call for him. Oriana went to the front of the truck and saw that Sevenler had been shot. He ran to the road and flagged down a police officer.

An eyewitness told police that she had seen four black men leaving the scene in a white Ford Taurus with license plate number H2O RLV. Video surveillance from the motel showed several men getting out of and back into a Ford Taurus in the parking lot. The video did not capture the shooting.

The day after the shooting, Detective Heath Wester, the detective assigned to the case, received a call from an anonymous tipster giving him an

2

address for a duplex in Arlington. Detective Wester, along with three other detectives, went to the address. They found a white Ford Taurus with license plate number H20 RYV, one digit different than the license plate number given by the eyewitness, parked in the duplex's parking lot. Emanuel Phillips lived at the address given to Detective Wester. Phillips answered the door and immediately began telling the detectives about the shooting, without any questioning from the detectives. While talking to the detectives, Phillips saw Curnel and Chris Johnson leaving the duplex next door, and he pointed out the two men to the detectives. Johnson's mother owned the duplex next door to Phillips's, and Curnel had been staying there with Johnson.

The detectives arrested Phillips, Curnel, and Johnson. Police found shotgun shells and a box of ammunition under a mattress in Johnson's home. They found paperwork belonging to Johnson's cousin, Toborish Roberson, next to the mattress. The police also arrested Roberson.

Detective Wester interviewed Johnson, Roberson, and Phillips, and all three men said that Curnel was the shooter. Johnson told officers that the murder weapon, a shotgun belonging to Curnel, was hidden inside a mattress in Johnson's duplex. Police obtained a search warrant and searched Johnson's home a second time; they found a silver single-shot twelve-gauge shotgun inside a mattress in Johnson's bedroom, where Curnel and Johnson slept.

3

Detective Wester compiled two photospreads, one containing Johnson's photo and one containing Curnel's photo. Oriana identified both men from the photospreads. Curnel was indicted for capital murder for shooting Sevenler "in the course of committing or attempting to commit the offense of robbery of Cavit Sevenler."

At Curnel's trial, Phillips testified that he had been at Johnson's duplex on the day of the shooting watching the movie *Killa Season* with Johnson, Curnel, and Roberson. Johnson, Phillips, and Roberson were smoking marijuana, although Phillips did not recall Curnel smoking. The four men decided to go exchange Curnel's shotgun for a pistol. They took Phillips's Ford Taurus to meet another man at a motel to trade the guns. The man was not at the motel so they decided to drive around until he returned. Phillips explained at trial that they saw a man walking and decided to "jack him"; when they approached, the man started acting scared so they decided to leave. They then drove to the motel where Sevenler's truck was parked and saw Sevenler in the cab with his laptop open. Phillips testified that Curnel said, "That's a lick," which means an easy robbery or "fast cash." The men parked and tried to come up with a plan to rob Sevenler. Curnel, Roberson, and Johnson walked up to the truck while Phillips stayed by the car; Curnel had the shotgun. Phillips

4

had only taken a few steps away from the car when he heard the gunshot, and everyone ran back to the car. Curnel said, "He's dead. He's dead," and "I know how to hit a lick, and that's how you do it in the movies." Phillips testified that he was originally arrested for capital murder in connection with Sevenler's death but that he agreed to testify for the State in exchange for a ten-year sentence for aggravated robbery.

Johnson also testified against Phillips in exchange for a twelve-year sentence for aggravated robbery. He testified that Curnel had been staying with him for several months; they shared a bunkbed in Johnson's room. He testified that he, Curnel, Phillips, and Roberson were watching *Killa Season*, smoking weed, and talking about getting away with murder on the day of the incident. They left to exchange Curnel's shotgun for a pistol, and while driving around, a man stopped them and asked if they had any drugs. They then saw Sevenler inside his truck. Curnel said it was "a lick"; when asked what "a lick" means, Johnson testified that it could mean "numerous things" and that, in that particular situation, he "didn't think of it meaning anything." He said that the "last thing on [his] mind was robbery." He explained that after they parked at the motel, everyone but Phillips got out, "James shot the gun; we all left."

Laurel Hall testified that she lives near Johnson's duplex, that she has

known Johnson since elementary school, and that she was friends with Curnel. She testified that on the night that Sevenler was shot, Curnel went to her house and told her that he had shot somebody. A letter that Curnel wrote Hall while in jail was also introduced at trial. In the letter, Curnel wrote, "I dont know if its true or not but word is lil Chris [Johnson] ain't the only sni[t]ch." Hall testified that she was upset because she thought Curnel was suggesting that she "was snitching" even though she had not talked to police. Additionally, Hall and Hall's mother both testified that when Curnel went to their house that night, he wanted to watch Channel 4 news because "they pick up things real quick."

Curnel called Aaron Russell to testify on his behalf. Russell testified that he and Curnel are friends and that he saw Curnel on the night of Sevenler's death. Curnel was upset and told Russell that he could not tell him the whole story but that "someone was killed, and there was a robbery." Russell also testified that Johnson had told him that Curnel was in jail for something he did not do.

Scotty Bryant also testified for the defense. He testified that he had been in jail with Johnson and that Johnson had confided to him that he was the one who shot Sevenler "just to prove that he could kill somebody."

6

The jury convicted Curnel of capital murder. Acknowledging that the State had waived the death penalty, the trial court sentenced Curnel to life in prison.

III. JURY CHARGE

In his first point, Curnel argues that the trial court erred by failing to include an accomplice-witness instruction in the jury charge. Curnel acknowledges that his defense counsel did not object to the exclusion of the accomplice-witness instruction, but he argues that he suffered egregious harm as a result of the trial court's error.

A. Standard of Review

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). Initially, we must determine whether error occurred. If it did, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S.W.2d at 731–32.

If there is error in the court's charge but the appellant did not preserve it at trial, we must decide whether the error was so egregious and created such harm that the appellant did not have a fair and impartial trial—in short, that

7

"egregious harm" has occurred. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Egregious harm is the type and level of harm that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Allen*, 253 S.W.3d at 264 & n.15; *Olivas v. State*, 202 S.W.3d 137, 144, 149 (Tex. Crim. App. 2006); *Almanza*, 686 S.W.2d at 172.

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Hutch*, 922 S.W.2d at 172–74. The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Hutch*, 922 S.W.2d at 171.

8

## B. Accomplice-Witness Instruction

Article 38.14 of the code of criminal of procedure provides, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). A prosecution witness "who is indicted for a lesser included offense based upon alleged participation in commission of the greater offense is also an accomplice as a matter of law." *Ex parte Zepeda*, 819 S.W.2d 874, 876 (Tex. Crim. App. 1991). If a prosecution witness is an accomplice as a matter of law, the trial court is under a duty to instruct the jury accordingly, and failure to do so is error. *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002).

The instruction does not require that the jury should be skeptical of accomplice-witness testimony or give less weight to such testimony than to other evidence. *Id.* The instruction merely informs the jury that it cannot use the accomplice-witness testimony unless some non-accomplice evidence connects the defendant to the offense. *Id.*

The test for sufficient corroboration is whether, after excluding the accomplice's testimony, other evidence of an incriminating character tends to

9

connect the defendant with the commission of the offense. *Burks v. State*, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1114 (1995); *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993). Corroborating evidence need not directly connect the defendant to the crime or be sufficient by itself to establish guilt; instead, the combined weight of the corroborating evidence need only tend to connect the defendant to the offense. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000); *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App.), *cert. denied*, 522 U.S. 844 (1997). Additionally, the corroborative evidence may be circumstantial or direct, and the accomplice testimony need not be corroborated on every element of the offense. *Brosky v. State*, 915 S.W.2d 120, 138 (Tex. App.—Fort Worth, pet. ref'd), *cert. denied*, 519 U.S. 1020 (1996).

Non-accomplice evidence can render harmless a failure to submit an accomplice-witness instruction by fulfilling the purpose an accomplice-witness instruction is designed to serve. *Herron*, 86 S.W.3d at 632. The omission of an accomplice-witness instruction is generally harmless under the egregious harm standard unless the corroborating non-accomplice evidence is "'so unconvincing in fact as to render the State's overall case for conviction clearly

10

and significantly less persuasive.'" *Id.* (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).

## C. No Egregious Harm

Here, Curnel was indicted for and convicted of capital murder for killing Sevenler in the course of committing or attempting to commit robbery. *See* Tex. Penal Code Ann. § 19.03(a)(2) (Vernon Supp. 2009). Both Phillips and Johnson testified that they had been indicted for aggravated robbery for their participation in this crime; consequently, they were accomplices as a matter of law, and the trial court erred by not including the accomplice-witness instruction in the jury charge. *See Zepeda*, 819 S.W.2d at 876. We must consider whether Curnel suffered egregious harm as a result of this error. *See Herron*, 86 S.W.3d at 631.

The non-accomplice evidence in this case consisted of (1) Oriana's identification of Curnel from a photospread and in court, (2) the videotape showing four men in a Ford Taurus at the scene of the crime and an eyewitness's report of four black men at the scene in a white Ford Taurus, (3) the shotgun found in the room where Curnel slept, (4) Hall's testimony that Curnel had told her that he shot someone, (5) Hall's and her mother's testimony that Curnel had wanted to watch Channel 8 news at their house after the

11

shooting because "they pick up things real quick," (6) Curnel's letter to Hall suggesting that someone else was a "snitch," and (7) Russell's testimony that Curnel had seemed nervous and had told him "someone was killed, and there was a robbery."

Curnel does not dispute that non-accomplice evidence linked him to murdering Sevenler, and the non-accomplice evidence—including his admission to Hall that he had shot someone—certainly connects Curnel to Sevenler's murder and shows that he was the shooter. *See id.* However, Curnel argues that no non-accomplice evidence tends to connect him to *robbery* in the course of a murder as required to establish his guilt for capital murder. But the non-accomplice evidence need not prove all the elements of the alleged offense or directly link Curnel to the commission of the offense; rather, it is sufficient if it tended to connect him to the offense. *See Cathey*, 992 S.W.2d at 462; *Brosky*, 915 S.W.2d at 138. Moreover, Russell's testimony—that Curnel had told him "someone was killed, and there was a robbery" does connect Curnel with robbery.

We hold that the corroborating non-accomplice evidence is not "'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Herron*, 86 S.W.3d at 632 (quoting

12

*Saunders*, 817 S.W.2d at 692). Consequently, we hold that the trial court's error in failing to include an accomplice-witness instruction in the jury charge did not result in egregious harm to Curnel such that he did not have a fair and impartial trial.[2] *See* Tex. Code Crim. Proc. Ann. art. 36.19; *Allen*, 253 S.W.3d at 264; *Hutch*, 922 S.W.2d at 171; *Almanza*, 686 S.W.2d at 171. We overrule Curnel's first point.

## IV. MOTION FOR INSTRUCTED VERDICT

In his second point, Curnel argues that the trial court erred by denying his motion for instructed verdict at the close of the State's case because no corroborative non-accomplice evidence existed to support the accomplice-witness testimony that he was guilty of capital murder.

A challenge to the denial of a motion for instructed verdict is actually a challenge to the legal sufficiency of the evidence. *Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1051 (2003); *McCown v. State*, 192 S.W.3d 158, 160 (Tex. App.—Fort Worth 2006, pet. ref'd).

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in

---

[2] Curnel argues that we should apply the harm analysis set forth in *Davis v. State*, 278 S.W.3d 346 (Tex. Crim. App. 2009), which applies to ineffective assistance claims. We decline to do so but note that we apply *Davis* to Curnel's third point below and find no harm under that standard as well.

13

order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In this case, Curnel is specifically challenging the legal sufficiency of the non-accomplice evidence corroborating the accomplice-witness testimony that Curnel, along with Phillips, Johnson, and Roberson, committed robbery or attempted robbery. As we explained in addressing Curnel's first point above, the corroborating non-accomplice evidence sufficiently tended to connect Curnel to the offense. Curnel argues that we cannot consider Russell's testimony because he testified during the defense's case-in-chief, after Curnel had moved for an instructed verdict. However, our review of the evidence is not limited to the evidence presented before Curnel's motion for instructed verdict, and we may consider Russell's testimony in our review. *See Montgomery v. State*, 198 S.W.3d 67, 85 (Tex. App.—Fort Worth 2006, pet. ref'd).

Viewing the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact could have found that Curnel committed robbery or attempted to commit robbery and that the accomplice-witness testimony

14

was corroborated by Russell's testimony. Consequently, we hold that the evidence is legally sufficient to support Curnel's conviction for capital murder and that, consequently, the trial court did not err in refusing an instructed verdict for Curnel. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We overrule Curnel's second point.

## V. Effective Assistance of Counsel

In his third point, Curnel argues that his trial counsel was ineffective because he did not request an accomplice-witness instruction be included in the jury charge.

We apply a two-pronged test to ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 687, 104 S. Ct. at

15

2064; *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 62–63; *Thompson*, 9 S.W.3d at 812. There is no requirement that we approach the two-pronged inquiry of *Strickland* in any particular order, or even address both components of the inquiry if the defendant makes an insufficient showing on one component. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 (1984).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Id.* at 687, 104 S. Ct. at 2064. In other words, the appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S. Ct. at 2068. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

In *Davis v. State*, the court of criminal appeals discussed the appropriate analysis for an ineffective assistance claim in which defense counsel failed to request an accomplice-witness instruction. 278 S.W.3d at 352–53. The court held that the issue of prejudice "will generally turn on whether there was a

substantial amount of non-accomplice evidence and whether the record reveals any rational basis on which the jury could have doubted or disregarded that evidence." *Id.* at 353.

In this case, we need not address whether, under the first *Strickland* prong, Curnel's attorney was ineffective for not requesting an accomplice-witness instruction because Curnel has not satisfied the second *Strickland* prong. *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. As we explained above, the non-accomplice evidence, if believed, established that Curnel admitted to Hall that he had killed someone and wrote her a letter suggesting that someone "snitch[ed]," that Oriana identified Curnel as one of the men who approached Sevenler's truck immediately before Sevenler was shot, that a videotape showed four men in a Ford Taurus at the scene of the crime, that an eyewitness reported four black men at the scene in a white Ford Taurus, that police found a shotgun in the room where Curnel slept, that Curnel told Hall and her mother to turn the television to Channel 8 because "they pick up things real quick," and that Curnel nervously told Russell that someone was killed and there was a robbery.

As detailed above, the record reflects a significant amount of non-accomplice evidence that tended to connect Curnel to the offense committed.

17

Furthermore, the record reveals no rational basis on which the jury could have doubted or disregarded that evidence. *See Davis*, 278 S.W.3d at 352. We find no reasonable probability that, but for counsel's alleged deficient performance, the result of the guilt-innocence stage would have been different. *See id.* at 352–53. Accordingly, we overrule Curnel's third point.

## VI. CONCLUSION

Having overruled Curnel's three points, we affirm the trial court's judgment.

PER CURIAM

PANEL: WALKER, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 28, 2010

18