11th Court of Appeals
Eastland, Texas
Opinion
 
Jason Don Wimberley
            Appellant
Vs.                  No. 11-03-00125-CR – Appeal from Stephens County
State of Texas
            Appellee
 
            The jury convicted Jason Don Wimberley of escape with a deadly weapon, found the
enhancement allegation to be true, and assessed his punishment at confinement for 35 years. We
affirm.
Arguments on Appeal
            Appellant has briefed three issues on appeal. In each issue, he challenges the sufficiency of
the evidence to support the jury’s determination that he used a deadly weapon in his escape. First,
appellant argues that the evidence is legally insufficient. Second, he contends that the evidence is
factually insufficient. In the final issue, appellant contends that the trial court erred in not sustaining
his motion for directed verdict because the evidence was either legally or factually insufficient that
he used a deadly weapon in his escape from the Stephens County Jail. Pursuant to Canales v. State,
98 S.W.3d 690 (Tex.Cr.App.2003), and Williams v. State, 937 S.W.2d 479 (Tex.Cr.App.1996), we
will treat the third issue as a challenge to the legal and factual sufficiency of the evidence.
Applicable Standards of Review
            In order to determine if the evidence is legally sufficient, we must review all of the evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000). In order to determine if the
evidence is factually sufficient, we must review all of the evidence in a neutral light and determine
whether the evidence supporting guilt is so weak as to render the conviction clearly wrong and
manifestly unjust or whether the evidence supporting guilt, although adequate when taken alone, is
so greatly outweighed by the overwhelming weight of contrary evidence as to render the conviction
clearly wrong and manifestly unjust. Vasquez v. State, 67 S.W.3d 229, 236 (Tex.Cr.App.2002);
Goodman v. State, 66 S.W.3d 283 (Tex.Cr.App.2001); Johnson v. State, 23 S.W.3d 1, 11
(Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d
126 (Tex.Cr.App.1996). 
 Evidence Presented
            At trial, it was undisputed that appellant was confined in the Stephens County Jail, that he
escaped from the Stephens County Jail, and that the only jailer on duty at the time of his escape was
Paul Wayne Killingsworth, Jr. The two main issues in dispute were whether the jailer assisted
appellant in his escape and whether appellant used a homemade knife.
            Killingsworth testified that, in November 2001, he was employed as a jailer by the Stephens
County Sheriff’s Department. Killingsworth stated that, during the seven to nine months that he
worked as a jailer, he worked either the late evening or the night shift. While he received “on-the-job” training, Killingsworth did not attend jailer certification school. Killingsworth was terminated
for accepting a gift from a prisoner before he could attend the school. 
            Killingsworth stated that, on the night of the incident, appellant asked him if he would give
appellant’s canister of tobacco to appellant’s brother who was confined in another cell. 
Killingsworth stated that he was “real skittish” about the transfer because he had never participated
in a transaction like that before. Killingsworth instructed appellant to push the canister through the
“bean hole” in his cell door. When Killingsworth approached the cell door, appellant grabbed him
and pulled his hand through the bars. Killingsworth testified that he felt something very sharp and
very firm poking him. Appellant removed Killingsworth’s keys and unlocked the cell door. While
appellant did not say anything about stabbing Killingsworth, Killingsworth stated: “[T]hat was his
intentions if I resisted.” Killingsworth testified that he was “very” fearful that he would be seriously
injured or killed. Killingsworth stated that appellant then locked him in the cell. 
            Stephens County Sheriff James Reeves testified that a “shiv” or a homemade knife was found
in the jailer’s office. Sheriff Reeves identified State’s Exhibit No. 6 as a photograph of the shiv. 
The shiv (also referred to as a “shank”) was made from a sharp pencil, a cardboard toilet paper roll,
and twine from a prison mattress. In describing how the shiv was capable of inflicting serious bodily
injury, Sheriff Reeves testified:
[T]his is very sharp on this end as pencils are. This is used much like a knife. If a
person has this and knows what they are doing, you can pierce the rib cage right here
in the area of the heart and either puncture a lung or puncture the heart. It can be
used to stab someone in this area right here, which can either get the jugular vein or
perhaps go into their spinal column back here. It can be used to go in through the
eye, which will go into the brain if there’s enough force applied, or up through the
roof of the mouth, the same area. 
                         
Sheriff Reeves testified that Killingsworth was not involved with any other escapes from the jail and
that appellant’s escape was not a consideration in his decision to terminate Kilingsworth. Sheriff
Reeves stated that Killingsworth was terminated because he accepted a gift from Derk Owens, a
prisoner in the jail. 
            State’s Exhibit No. 9, a letter from appellant to his niece (a high school student) dated two
days after the escape was admitted into evidence. The letter reads in part:
            Hey, how’s it going, my little dope fein niece. I hope it’s going better for you
than it is for me. So your brain dead, dope f----d, insane ass, Uncle Jason did the
unthinkable once again. So did I make the front page of the paper again with my
great escape?
 
                                                            * * *
 
            Well, I made a homemade knife and waited for Jimmy’s friend Paul to come
to work. When he got there, I gave it time for the phones to go off, called him [back]
to my cell, and asked him to pass a can of tobacco back to John [appellant’s brother]. 
It wouldn’t fit through the bars.
 
            Well, when he opened the door, I jumped him. He tried to fight back, but
he’s a hoe, so I threw him up on the wall and pulled the knife on him. I took his
mace, radio, keys, and locked him in the cell I was in. I went back to see if Tank or
anyone wanted to go and they all caught pussy. I didn’t even ask John [appellant’s
brother] because I didn’t want him to go. Well, I got the money box and went
downstairs, got Paul’s truck, and hauled ass.
         
            Michael Kelly Walker testified that he was a prisoner at the time of appellant’s escape. 
Walker stated that Killingsworth would let inmates “out to go see their old ladies in the middle of
the night.” Walker also testified that Owens had told Killingsworth that, if Killingsworth would
bring him some weed, he would give Killingsworth his boots.
            On cross-examination, Walker stated that he was currently in prison and that the Aryan
Brotherhood had talked to him about this case. He had received a letter through the prison
“grapevine” that was “[a] little bit as a threat.” He felt that the Aryan Brotherhood had “some
stake” in the trial.
            Carrie Lynn Carrigan testified that she was a prisoner in the jail at the time of appellant’s
escape. She stated that she lied in her statement to Sheriff Reeves when she stated that she saw
appellant with the jailer’s keys in one hand and something sharp in his other hand. Carrigan testified
that she had just started going to church and that God had convinced her to tell the truth at trial. She
heard Killingsworth unlock the cell door and then heard the two men wrestling. She saw appellant
with the keys and the money box. She did not see appellant with a weapon. After appellant escaped,
Carrigan, another female prisoner, and Killingsworth planned a cover-up to protect Killingsworth’s
job.
            Appellant testified that he told Killingsworth that someone was going to give him $1,500 for
his truck and that, if Killingsworth would let him out of jail, he would give the money to
Killingsworth. Appellant stated that he knew that Killingsworth was having money problems and
that, on the night of his escape, he offered to take Killingsworth’s pickup and “burn it.” Appellant
testified that he talked Killingsworth into it and that Killingsworth left to make rounds in the jail one
more time. 
            According to appellant, Killingsworth returned and opened the cell door. Killingsworth gave
appellant his keys, mace, and walkie-talkie. Appellant testified that he did not have a weapon and
that he never threatened Killingsworth. Appellant locked Killingsworth in the cell, took the money
box, and left in Killingsworth’s pickup.
            Appellant stated that he never touched Killingsworth, never threatened him with a weapon,
and never pulled him through the bars of the cell. He wrote the letter to protect Killingsworth and
to “swell” his niece’s head and make her laugh.
            Appellant testified that the prison system listed him as a “confirmed Aryan Brotherhood” and 
a “confirmed Aryan Circle” and that he was, however, neither. Instead, he stated that he was a
“woodpilist.” Appellant stated that a woodpilist was someone who would fight for himself and
shared appellant’s beliefs against “interbreeding” between races. Woodpilists were not organized
into a group and were not considered a gang. Appellant considered himself a white separatist (like
other woodpilists) and not a white supremacist (like the Aryan Brotherhood or Aryan Circle).
Sufficiency of the Evidence
            The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses’
testimony. TEX. CODE CRIM. PRO. ANN. art. 36.13 & 38.04 (Vernon 1979 & 1981). When
considered in the light most favorable to the verdict, a rational trier of fact could have found beyond
a reasonable doubt that appellant used a deadly weapon. Sheriff Reeves testified that the shiv was
capable of causing serious bodily injury or death. Killingsworth stated that he felt appellant press
a very sharp object against him and that appellant’s action caused him to fear for his life. The
evidence is legally sufficient to support the conviction. 
            When all of the evidence is viewed in a neutral light, the evidence supporting guilt is not so
weak as to render the conviction clearly wrong and manifestly unjust and is not so greatly
outweighed by the overwhelming weight of contrary evidence as to render the conviction clearly
wrong and manifestly unjust. The evidence is factually sufficient to support the conviction. All
three issues are overruled.
This Court’s Ruling
            The judgment of the trial court is affirmed.
 
                                                                                                PER CURIAM
 
May 13, 2004
Do not publish. See TEX.R.APP.P. 47.2(b).
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.