Opinion issued February 10, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00744-CR

———————————

Darren Tramell Hughes, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 178th District Court

Harris County, Texas



Trial Court Case No. 1195765

 



 

MEMORANDUM OPINION

          A
jury convicted appellant Darren Tramell Hughes of unlawful possession of a
firearm by a felon.  See Tex. Penal Code § 46.06(a) (West Supp. 2010).  The jury
assessed punishment at 5 years’ confinement in prison.  On appeal, Hughes argues that the State
presented insufficient evidence to support the jury’s verdict.  We affirm.

Background

          Hughes
and his girlfriend Tamika Houston were preparing to do laundry.  Hughes walked to a convenience store near his
home to get a beverage while Houston continued to sort clothes.  Houston noticed that $125 was missing from
her purse, and when Hughes returned, she asked him to return the cash.  Houston testified that Hughes became very
angry and verbally abusive.  He refused
to give the money back to her, took out one of his guns, a chrome handgun, and
told her that she needed to leave.  Their
argument escalated as Houston gathered her things to leave.  She testified that while the two were
standing in the front yard, Hughes shot his chrome handgun into the air and
then pointed it at her face and told her to leave before he shot her.

          Houston
testified that she immediately got into her car and left the house.  She called Hughes’s parents and the
police.  She testified that Hughes’s
father, Barron Medlow, arrived and tried to distract her attention away from
Hughes, who had left the house and had walked toward a nearby liquor
store.  Medlow testified that he arrived
while Hughes and Houston were arguing in the yard and that he encouraged
Houston to go home while everyone “cooled off.”

          The
first responding officers arrived approximately 5 to 10 minutes after Houston
called the police.  Officer R. Ridel and
his partner were the first to arrive. 
Ridel testified that he saw Houston, who was flagging them down at the
street corner, and stopped to ask her about the incident.  Houston testified that she believed Hughes
had two guns with him, the chrome gun he had pointed at her earlier and a black
.22 Ruger.  She had seen Hughes with both
weapons that morning and on numerous other occasions, and she described them to
the officers.  Houston also pointed to
Hughes, who was standing in a grassy area next to the liquor store.  

Ridel testified that when the
officers turned their attention toward Hughes, he looked back at them and then
took off running.  The officers gave
chase and ordered him to put his hands up. 
Hughes did not comply, so they pinned him on the ground, handcuffed him,
searched his person, and placed him in the back of their squad car.  The officers did not find any weapons on him.  Ridel did not see Hughes throw any weapons,
but he found two guns, matching Houston’s description, in the grassy area where
Hughes had been standing before he fled. 
While Ridel was conducting the search, Hughes repeatedly called out for
him in an apparent attempt to distract him. 
Officer T. Derry, who arrived after Hughes was in custody, collected the
weapons and dusted them for evidence of latent fingerprints.  Houston described the weapons a second time for
Derry and then identified them as guns that belonged to Hughes.

Medlow testified that he did not
see Hughes carrying a gun and that Hughes did not run from the police.  Gary Owens, who was Hughes’s roommate at the
time and had witnessed part of the argument between Hughes and Houston,
testified that he had never seen Hughes in possession of a gun and did not see
him with a gun on the day of the incident. 
He testified that Hughes was drinking a soda when the officers arrived
and that he seemed “pretty compliant” when the officers placed him under
arrest.  But Owens admitted that he did
not have the opportunity to see whether Hughes attempted to flee.

Hughes was indicted for aggravated
assault and unlawful possession of a firearm by a felon.  He stipulated that he had been convicted previously of a
felony offense.  The jury acquitted Hughes on the aggravated
assault charge, but found him guilty of unlawful possession and assessed
punishment at 5 years’ confinement in prison. 
On appeal Hughes argues that the trial court erred in denying his motion
for directed verdict because the State failed to present legally sufficient
evidence that he possessed a firearm in a location other than the place where
he lived.

Analysis

          A person is guilty of
unlawful possession of a firearm if he was convicted previously of a felony
offense and possessed a firearm after the conviction “at any location other
than the premises at which [he] lives.”  Tex. Penal Code Ann. § 46.04(a)(2).  In his sole issue, Hughes contends that the
evidence is insufficient to establish a single element of the offense, namely “possession,”
which requires proof that the defendant exercised actual care, custody,
control, or management of a firearm and knew that it was contraband.  See Tex. Penal Code Ann. § 1.07(39) (West Supp. 2010).  He argues that the trial court should have granted
his motion for directed verdict.  We construe
a challenge to a trial court’s denial of a motion for directed verdict as a
challenge to the legal sufficiency of the evidence.  See
Canales v. State, 98 S.W.3d 690, 693 (Tex. Crim. App. 2003).

Hughes argues that the State did
not present sufficient evidence to establish he possessed a firearm at a
location other than the premises at which he lived.  Specifically, he contends that he did not own
or possess a gun on the date of the offense, that the testimony of the police
officers was inconsistent, and that the testimony of Houston, the State’s
eyewitness, was not credible.

In assessing legal sufficiency, we
determine whether, based on all of the record evidence viewed in the light most
favorable to the verdict, a rational jury could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89
(1979); Swearingen v. State, 101
S.W.3d 89, 95 (Tex. Crim. App. 2003).  Under the Jackson standard,
evidence is insufficient to support a conviction when, considering all
the evidence admitted at trial in the light most favorable to the verdict, a
fact finder could not have rationally found that each element of the charged
offense was proven beyond a reasonable doubt. 
See Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; In re Winship, 397
U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  This standard of review is established under two
circumstances:  (1) the record
contains no evidence, or merely a “modicum” of evidence, probative of an
element of the offense; or (2) the evidence, viewed in the light most
favorable to the verdict, conclusively establishes a reasonable doubt.  See
Jackson, 443 U.S. at 314, 318 n.11,
320, 99 S. Ct. at 2319; Williams, 235
S.W.3d at 750; Laster v. State, 275
S.W.3d 512, 518 (Tex. Crim. App. 2009).  In applying the Jackson standard of review, an appellate court must defer to the responsibility
of the fact finder to fairly resolve conflicts in testimony, to weigh evidence,
and to draw reasonable inferences from the facts.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Williams, 235 S.W.3d at 750.  An
appellate court presumes that the trier of fact resolved any conflicts in the
evidence in favor of the verdict and defers to that resolution, provided that
the resolution is rational.  See Jackson, 443 U.S. at 326; 99
S. Ct at 2793.  An appellate court may not re-evaluate the weight and credibility of the
record evidence and thereby substitute its own judgment for that of the fact
finder.  Williams, 235 S.W.3d at
750.

I.                 
Possession

To prove the offense of unlawful
possession of a firearm by a felon, the State must show that the accused was
convicted previously of a felony offense and possessed a firearm after the
conviction and before the fifth anniversary of his release from confinement or
from community supervision, parole, or mandatory supervision, whichever date is
later.  Tex.
Penal Code Ann. § 46.04(a); James v. State,
264 S.W.3d 215, 218 (Tex. App.—Houston [1st Dist.] 2008, pet. ref’d).  Here, the State was required to establish
that Hughes had been convicted previously of a felony and that he possessed a
firearm at a location other than the place where he lived.  Tex.
Penal Code Ann. § 46.04(a)(2).  On appeal, Hughes argues only that the State
failed to present sufficient evidence of his possession.

Possession is a voluntary act if the possessor knowingly obtains or receives
the thing possessed or is aware of his control of the thing for a sufficient
time to permit him to terminate his control.  Tex.
Penal Code Ann. § 6.01(b) (West 2003); James, 264 S.W.3d at 218.  If the
firearm is not found on the defendant or is not in his exclusive possession,
the evidence must link him to the firearm.  See Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); James, 264
S.W.3d at 218–19; Williams v. State, 313 S.W.3d 393, 397 (Tex. App.—Houston [1st
Dist.] 2009, pet. ref’d).  The evidence
must establish that the defendant’s connection with the contraband was more
than fortuitous.  Evans, 202 S.W.3d at 161.  Among the many possible factors that we may
consider to decide whether there is a link between the defendant and the
contraband are whether: (1) the contraband was in plain view; (2) the
defendant was the owner of the location where the contraband was found;
(3) the defendant was in close proximity and had ready access to the
contraband; (4) conduct by the defendant indicated a consciousness of guilt,
including extreme nervousness or furtive gestures; (5) the
defendant had a special connection or relationship to the contraband; (6) the
place where the contraband was found was enclosed; (7) contraband was
found on the defendant; (8) the defendant attempted to flee; and (9) affirmative
statements connect the defendant to the contraband,
including incriminating statements made by the defendant when arrested.  James, 264 S.W.3d at 219.  It is not the number of links that is
dispositive, but rather the logical force of all of the evidence, direct or
circumstantial.  Evans, 202 S.W.3d
at 162.  The absence of various links
does not constitute evidence of innocence to be weighed against the links
present.  Hernandez v. State, 538 S.W.2d
127, 131 (Tex. Crim. App. 1976); James, 264 S.W.3d at 219.

Hughes contends that
the evidence is insufficient because none of the witnesses testified that they
saw him hold or throw the guns while he was standing in the field and because
his fingerprints were not found on the recovered guns.  Had this evidence been presented, it would
have helped to establish a significant link between Hughes and the firearms,
but other circumstances sufficiently link the recovered firearms to the appellant
and show that he knowingly possessed the firearms.

Factors
1 and 3: Hughes was arrested immediately after he fled the field where police
found the firearms, and the weapons were found in plain view.  Ridel and his partner arrested Hughes in the
middle of the street immediately after he fled the grassy area where Ridel
recovered two firearms.  Ridel testified
that he saw Hughes standing alone in the field and that he watched him as he
fled.  Ridel followed the path taken by
the defendant and spotted the black .22 Ruger in the middle of the field.  He then followed a trail in grass and
discovered the chrome pistol about 10 feet away from the place where he
recovered the other gun.

Factors 4, 8 & 9:
Hughes fled as the police approached him, and his conduct and statements at the
time of arrest indicated consciousness of guilt.  When the responding officers first arrived,
Hughes was standing in the field next to the liquor store.  Houston and Ridel testified that Hughes fled
after Houston identified him and the police moved in his direction.  Hughes did not comply with the officers’
orders, and he apparently tried to distract Ridel from his search by calling
out for him.

Factor
5: Houston had seen Hughes with the same weapons minutes before they were found
in the field. 
Although no one testified about seeing Hughes with the firearms at the
liquor store, Houston testified that she had seen Hughes carrying the chrome
gun that morning and that he had pointed it in her face.  She further testified that she believed he
was carrying the black gun because he typically carried both weapons and
because she had seen him that morning with both guns.  She saw Hughes firing both weapons into the
air on numerous occasions before the day of the incident, and she testified
that Hughes fired the chrome gun into the air when they were arguing.  Houston and Medlow both testified that Hughes
walked from the front yard—without re-entering the house—to the liquor
store.  Although Hughes was not seen
holding a weapon after he left the house, Ridel recovered two guns matching the
description Houston provided.  Ridel
testified that she described them “to a perfect T,” and after they were
recovered, Houston identified the weapons as belonging to Hughes.

We conclude that Hughes’s connection with the recovered guns was more than fortuitous.  The
logical force of all of the evidence, direct and circumstantial, supports the
jury’s conclusion that Hughes possessed
the firearms.

II.              
Credibility of witnesses

Hughes also argues that the jury improperly weighed the credibility of
Houston’s testimony, and he contends that the police officers’ testimony was
inconsistent.  We apply
the Jackson v. Virginia standard of review to this legal
sufficiency argument on appeal, and determine “whether, after viewing the evidence in the light
most favorable to the prosecution, any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.”  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  The
jury is the exclusive judge of the facts. 
Tex. Crim. Proc. Code Ann.
arts. 36.13 & 38.04 (West 2007 & 1979); Brooks v. State, 323 S.W.3d 893, 899 (Tex. Crim.
App. 2010).  Because the jury is present to hear the
testimony and is in the best position to judge the credibility of a witness, we
afford almost complete deference to a jury’s decision when that decision is
based upon an evaluation of credibility. 
Lancon v. State, 253 S.W.3d
699, 705 (Tex. Crim. App. 2008).  The
jury was in the best position to evaluate any bias or inconsistency in the
testimony of Houston and the responding officers.  See id.  Notwithstanding any
potential bias, the jury
was free to believe or disbelieve the testimony of any witness in whole or in
part.  See James, 264 S.W.3d at 220–21 (Tex. App.—Houston [1st Dist.]
2008, pet. ref’d).  Considering all of the evidence in the light
most favorable to the prosecution, we conclude that none of Hughes’s arguments
about the credibility of the witnesses cast any doubt upon whether the jury could
have found beyond
a reasonable doubt that Hughes unlawfully possessed a firearm.

Conclusion

We have reviewed all of the evidence in the record.  Viewing the evidence in the light most
favorable to the verdict, we hold that a rational trier of fact could have
found the element of possession beyond a reasonable doubt.  See Jackson,
443 U.S. at 318–19, 99 S. Ct. at 2788–89; see
also Williams, 313 S.W.3d at 397 (holding that evidence was sufficient where
defendant was not seen touching firearm and there were no fingerprints on
firearm but firearm recovered in close proximity to defendant and firearm case
was in plain view).  We therefore overrule Hughes’s sole
issue on appeal and hold that the evidence is factually sufficient to sustain
the jury’s guilty verdict.  We affirm the judgment of the trial court.

 

                                                                   Michael
Massengale

                                                                   Justice

 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Do
not publish.  Tex. R. App. P. 47.2(b).